IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| QUANESHIA LASHAY SWANSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )        CASE NO. 2:23-CV-320-KFP |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Quaneshia Lashay Swanson appeals the denial of her application for Social Security benefits under 42 U.S.C. § 405(g). The Court construes Swanson's brief in opposition to the Commissioner's decision (Doc. 6) as a motion for summary judgment and the Commissioner's brief in support of the Commissioner's decision as a motion for summary judgment (Doc. 7). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the parties' briefs, the Court finds Swanson's motion for summary judgment is due to be DENIED, the Commissioner's motion for summary judgment is due to be GRANTED, and the Commissioner's decision is due to be AFFIRMED.

---

[1] Martin O'Malley is now the Commissioner of Social Security and is automatically substituted as a party under Rule 25(d) of the Federal Rules of Civil Procedure. *See also* 42 U.S.C. § 405(g) (providing that action survives regardless of change in person occupying office of Commissioner of Social Security).

## I.    PROCEDURAL HISTORY

On September 27, 2019, Swanson filed an application for supplemental security income, alleging disability beginning July 6, 2012. The claim was denied initially and upon reconsideration; thereafter, Swanson filed a written request for hearing. On June 1, 2022, the ALJ held a telephone hearing. Swanson is represented by Carl Steven Pittman, an attorney who attended the hearing with her. Leigh Clemmons, a vocational expert, also appeared. At the hearing, Swanson moved to amend her alleged onset date of disability to the protective filing date, and the ALJ affirmed this motion. The ALJ issued a decision on August 18, 2022, finding Plaintiff not disabled. R. 15–43. The Appeals Council denied review. R. 1–3. This case is now ripe for judicial review. *See* 42 U.S.C. § 405(g).

## II.    SUMMARY OF THE ALJ'S DECISION

The ALJ found Swanson had severe impairments of diabetes mellitus, seizure disorder, depression, and anxiety. R. 21. Next, the ALJ found Swanson did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). *Id*. After considering the record as a whole, the ALJ determined Swanson had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations:

> [S]he can occasionally climb ramps and stairs and can occasionally climb ladders, scaffolds, and ropes. The claimant must avoid all exposure to unprotected heights, hazardous moving mechanical parts, and she must have no requirement to operate a motor vehicle. She can occasionally be exposed to extreme heat and vibration and should avoid jobs involving close contact with open flames and/or large open bodies of water. The claimant is limited to simple tasks. She can frequently interact with supervisors and can

2

occasionally interact with coworkers and the public. The claimant can adapt
to occasional changes in a routine work-setting.

R. 24. The ALJ adopted the vocational expert's conclusion that Swanson is unable to

perform any past relevant work R. 41. The VE testified that Swanson could perform the

requirements of representative occupations such as garment sorter, inspector, or tagger. R.

42, 77. Thus, based upon Swanson's age, education, work experience, and RFC, the ALJ

found Swanson was not disabled. R. 43.

## III.    STANDARD OF REVIEW

This Court's role in reviewing claims brought under the Social Security Act is a

narrow one. The scope is limited to determining whether substantial evidence in the record

as a whole supports the Commissioner's decision and whether the correct legal standards

were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Substantial evidence is more than a scintilla but less than a preponderance. *Martin v.*

*Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or

substitute its judgment for that of the Commissioner, and, even if the evidence

preponderates against the Commissioner's factual findings, the Court must affirm if the

decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v.*

*Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.    DISCUSSION

The only issue Swanson raises on appeal is whether the ALJ erred in failing to order

a consultative mental examination. Doc. 6 at 7. Swanson received a consultative

examination by a state agency consultant, Dr. Dorn Majure. However, she contends a

subsequent examination was required because the record did not contain a functional assessment of Swanson's mental limitations and because Swanson's medical records were not provided to Dr. Majure for review. *Id*. Thus, Swanson argues the ALJ lacked sufficient evidence to make an informed decision as to her mental limitations.[2] Doc. 6 at 7–8.

Swanson is correct that the ALJ has a basic obligation to develop a full and fair record. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). However, that obligation does not require a consultative examination in all circumstances. When there is "ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence[," the ALJ's duty to develop the record may require a consultative examination.[3] *Prunty v. Colvin*, No. 1:13-CV-00254-MP-GRJ, 2015 WL 1409664, at *7 (N.D. Fla. Mar. 26, 2015), *aff'd sub nom. Prunty v. Acting Comm'r of Soc. Sec. Admin.*, 635 F. App'x 757 (11th Cir. 2015). However, the ALJ need not order a consultative examination where "the record contains sufficient information for [the ALJ] to make an informed decision." *Ingram*, 496 F.3d at 1269 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)).

"Ordering a consultative examination is a discretionary matter for the ALJ and would be sought 'to try to resolve an inconsistency in the evidence or when the evidence

---

[2] Swanson includes one statement that the "opinions of Dr. Majure in the psychological CE were rendered two years before the ALJ [d]ecision," but she makes no further argument on this point. Doc. 6 at 7–8. Because Swanson failed to develop this argument, the Court need not address it. *See Ring v. Berryhill*, 241 F. Supp. 3d 1235, 1243 (N.D. Ala. 2017), *aff'd sub nom. Ring v. Soc. Sec. Admin., Comm'r*, 728 F. App'x 966 (11th Cir. 2018) (holding that claimant waived argument regarding alleged disabling symptoms because she "advances no argument that even attempts to tie this issue to the evidence and to relevant authority").

[3] *See* 20 C.F.R. § 404.1519(b) (providing that the agency *may* order a consultative examination if one is needed to resolve an inconsistency or if the evidence is insufficient to make a determination).

as a whole is insufficient to support a determination or decision' on the claim." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) (quoting 20 C.F.R. § 416.919a(b)). Before a court will remand a case for further development of the record, it considers whether the ALJ's failure to develop the record led to evidentiary gaps that resulted in unfairness or clear prejudice. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (citing *Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir. 1995)). At a minimum, clear prejudice "requires a showing that the ALJ did not have all of the relevant evidence before him in the record . . . or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (citation omitted). Here, Plaintiff has pointed to no evidentiary gaps or inconsistencies that needed to be resolved, and, as explained below, there was sufficient evidence in the record for the ALJ to make a determination as to Swanson's RFC and mental impairments.[4]

Swanson had a consultative evaluation with Dr. Majure in August 2020. R. 1765–68. The ALJ discussed the assessment in detail in her decision:

> As of the date of the evaluation, August 12, 2020, the claimant shared that she was then working at Church's Chicken, for the prior three months, working thirty-eight hours a week as a cashier. She further advised that, in the past, she worked at Taco Bell and Wendy's as a cashier. Dr. Majure informed that he was not provided any medical records for review, but did acknowledge the claimant's report of her admission to Crossbridge, noting her report that she was inpatient for four weeks, rather than one. Dr. Majure also noted her denial of outpatient mental health treatment. Significantly, he noted that the majority of the claimant's complaints appeared to be medical. He assessed that she appeared to have fair insight into her situation and appeared to exhibit appropriate effort on the sensorium, finding that although she was unable to perform serial 7 subtractions from 100, but was able to

---

[4] Swanson does not challenge the ALJ's decision regarding her physical impairments. Thus, the Court does not discuss Swanson's physical impairments or the ALJ's assessment of Swanson's physical impairments.

perform serial 4 additions from 1, and correctly calculated one out of three single-digit multiplication problems and one out of two simple word problems.

Dr. Majure opined that the claimant presented as unimpaired in her ability to understand, remember, and carry out instructions and to respond appropriately to supervisor, coworkers, and work pressures in a work setting. His assessments included rule out unspecified depressive disorder, and he found that her prognosis would be considered good with appropriate treatment (Exhibit 12F).

R. 39–40. After reviewing Dr. Majure's assessment, the ALJ credited his findings, but, because Dr. Majure did not provide a "functional assessment of the claimant in vocationally relevant terms" and assessed "rule out" diagnoses rather than a definitive diagnosis, the ALJ found the opinion to be only partially persuasive. R. 40. As explained below, the Court finds no error in the ALJ's assessment of Dr. Majure's evaluation or the decision not to obtain a subsequent consultative examination.

### A.    The absence of a functional assessment by Dr. Majure or another medical expert did not obligate the ALJ to order a consultative examination.

Swanson's first argument implies that a medical opinion is required to make an RFC determination, but "the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). In fact, an RFC need not be supported by a medical opinion to find it supported by substantial evidence. *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053-JHE, 2022 WL 860190, at *6–7 (N.D. Ala. Mar. 22, 2022) (stating ALJ not required to base RFC on doctor's opinion) (citing *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) and 20 C.F.R. § 404.1520c(a)). "To find that an ALJ's RFC determination is supported by

substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016), *judgment entered*, No. CV 14-00449-C, 2016 WL 1357753 (S.D. Ala. Apr. 5, 2016). So long as substantial evidence supports the RFC determination, the Court must affirm. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also* 42 U.S.C. § 405(g). Because the ALJ is not required to base the RFC on a medical opinion, the mere absence of a functional assessment by a medical provider does not create an evidentiary gap in the record, and Swanson has pointed to no unfairness or clear prejudice resulting from this absence.

### B. The ALJ was not required to reject Dr. Majure's evaluation that was conducted without a review of Swanson's medical records.

Plaintiff's next argument relates to Dr. Majure's having evaluated Swanson without reviewing her medical records. Dr. Majure, who met with Swanson in person in August 2020, states in his report that he reviewed a form provided by the Disability Determination Service and a report from Swanson, but he did not review Swanson's records from Crossbridge.[5] R. 1765–76. The ALJ found the opinion of another state agency psychological advisor, Dr. Linda Duke, to be only partially persuasive, and in doing so acknowledged that Dr. Duke did not have an opportunity to review evidence at the hearing level. Thus, Plaintiff seemingly argues that, because the ALJ found grounds to reject a

---

[5] The record indicates that Swanson was admitted to Crossbridge at Baptist Medical Center South for suicidal ideation on September 26, 2019, treated by Dr. Lucas, and discharged on October 2, 2019. R. 30–31, 822–875, 888–1148. Swanson's treatment by Dr. Lucas is discussed below.

portion of Dr. Duke's opinion because she did not review Swanson's medical records, the ALJ should reject Dr. Majure's opinion on these same grounds.

First, the ALJ did not broadly reject Dr. Duke's assessment, as Swanson urges for Dr. Majure; she found Dr. Duke's assessment partially persuasive. R. 41. Second, the reason for finding it partially persuasive was Dr. Duke's finding that Swanson's condition was non-severe and her limitations mild—this is what the ALJ believed a review of the medical records would contradict. Plaintiff points to no part of Dr. Majure's opinion that should have been rejected because it was contradicted by the record, and the ALJ's reasoning for finding Dr. Duke's assessment partially persuasive does not apply to Dr. Majure's evaluation. The ALJ found Dr. Majure's assessment partially persuasive because Dr. Majure declined to provide a functional assessment in "vocationally relevant terms" and made "rule out" diagnoses of depressive disorder and schizoaffective disorder without making definitive diagnoses. *Id*. Therefore, the ALJ found the assessment sufficient to determine a severe impairment (in contrast to Dr. Duke's findings) but of no use for determining vocational function. *Id*. Swanson has provided the Court with no reason that Dr. Majure's findings should be rejected simply because *different* findings by Dr. Duke were rejected as inconsistent with Swanson's medical records.

### C.    The record provided a sufficient basis for the ALJ to make an informed decision that is supported by substantial evidence.

As mentioned above, an ALJ need not order a consultative examination if the record as a whole is sufficient to support a determination, and a court will not remand unless a failure to develop the record led to inconsistencies or evidentiary gaps that resulted in

unfairness or clear prejudice. *See Brown*, 44 F.3d at 935. Swanson has made no such showing here. Having reviewed the record, the Court finds that the record adequately reflects Swanson's medical history with no apparent gaps or inconsistencies, the ALJ thoroughly discussed Swanson's medical history, and substantial evidence supports the ALJ's decision, as discussed below.

In her review of Swanson's medical history, the ALJ discussed Swanson's hospital emergency room records. These records show she was treated in September 2, 6, 9, and 21, 2019, after falling down stairs (R. 797–803); pain following a four-wheeler accident, when she was found to be alert and in no acute distress (R. 804–10); back and stomach pain (R. 504–19, 811–15); and headaches and cramping (R. 578–88, 816–20). Swanson presented at the emergency room again on September 25, 2019, and was seen by Dr. Hinda Greene for back pain from another four-wheeler accident. R. 31, 890. During a suicide screening at this visit, Swanson indicated that she had suicidal ideations, had some intentions of acting on them, had begun planning her suicide, and had attempted to commit suicide in the past. R. 31, 899–901. After lab work and tests for physical conditions, Dr. Greene cleared Swanson as stable but assessed her as suicidal and recommended transfer to Baptist Medical Center South for psychiatric facility placement. R. 31, 895.

Following transfer at Baptist Medical Center South, Swanson was treated by a psychiatrist, Dr. Joseph Lucas. R. 902–1002. He assessed her psychosocial weakness as family conflict, financial problems, and an unstable living situation and her strengths as communication skills and insight into problems. He admitted Swanson for care, finding her mood depressed and anxious, her affect flat, her thought content distorted, her thought

process and association tangential and circumstantial, and her judgment impaired. R. 30, 992–995. Dr. Lucas met with Swanson again the next day and noted her ongoing elevated suicide risk and profound functional impairment. Swanson remained inpatient through October 2, 2019. At the time of discharge, Dr. Lucas noted that she had been admitted emergently with escalating agitation, irritability, and suicidal ideation with auditory hallucinations but that she demonstrated a positive response to medications, becoming less anxious, frustrated, and irritable. R. 31, 989. He found contracting for safety was easy with Swanson, and she was tolerating her prescribed medication. *Id*. He determined discharge was appropriate. Further, although Dr. Lucas referenced post-discharge care, the behavior nurse noted that Swanson was alert and that she denied any suicidal or homicidal ideations and audio and visual hallucinations. R. 31, 975.

Swanson went to the emergency room again on January 5, 2020, for congestion and fever, and the doctor noted that her mood and affect were appropriate. R. 31. She returned to the emergency room on January 12 for headache, congestion, and chest pain but left against medical advice. She left against medical advice again on January 22, when she presented for back pain and vomiting. Her mood and affect were again noted as appropriate. She went back to the emergency room on January 24 with elevated blood sugar. She stated she had been out of her diabetes medication for two days, and the doctor noted that she was noncompliant with her medication. She went back on February 28 because she felt dizzy and because her blood sugar was high. She returned again on March 12 for abdomen pain, nausea, vomiting, and lower back pain. On March 25 she was treated after falling and

hitting her head. R. 1594–1763. Swanson raised no mental health issues at any of these visits.

For more than the next two years, Swanson presented at the emergency room for treatment approximately two dozen times for various physical complaints. R. 31–39, 1769–2802. Despite the regularity of her contact with medical professionals, Swanson rarely complained of mental health issues. In fact, aside from the September 2019 hospital stay described above, the only times Swanson expressed mental health concerns to emergency room providers were in December 2021, when an emergency room doctor referred her to Montgomery Area Mental Health for anxiety and trouble sleeping, and in May 2022, when she was admitted inpatient at Baptist Medical Center South for complaints of right-side weakness. R. 2711–71. Her objective testing at this latter visit was normal, but the neurologist recommended a psychiatric consultation. R. 2749. His notes do not state a specific reason for the recommendation, but the record reflects that she had been "extremely stressed recently due to the loss of her child." R. 2758.

In March 2022, Swanson was seen at Medical Outreach Ministries for anxiety and depression. She met with a nurse practitioner, Sara Hunter Frazer, whose mental health diagnostic findings included depression, generalized anxiety, schizophrenia, and bipolar disease. R. 2706. Frazer found Swanson to be alert, oriented, and in no distress; she filled Swanson's medications and referred her to mental health counseling. R. 37, 2706–2708. Swanson continued treatment at Medical Outreach Ministries through May 2022. R. 2772–75. Frazer added Buspar to Swanson's medication regimen for anxiety and depression and

continued her plan for referral to a counselor for anxiety and stress. R. 37, 2697–2709, 2772–75.

In short, Swanson's depression, anxiety, and relating mental impairments are documented throughout her medical records, of which the ALJ conducted an exhaustive review, but these records evidence only a few occasions when Swanson voiced any mental health concerns. Her medical records, reflecting only mild, conservative mental health treatment, present sufficient evidence of Swanson's mental health impairments. She presented at the emergency room for treatment routinely—sometimes four or five times per month—with no mental health complaints, and her psychiatric assessments were normal and unremarkable time and time again. On this record, the absence of any mental health issues supports the ALJ's decision, and the ALJ did not need additional information to make an informed decision about Swanson's mental impairments. *See Tomblin v. Berryhill*, No. 3:17CV635-GMB, 2018 WL 5114143, at *4 (M.D. Ala. Oct. 18, 2018) (citing *Vesy v. Astrue*, 353 F. App'x 219, 224 (11th Cir. 2009) ("the ALJ was not required to order additional tests because the record contained sufficient evidence for an informed decision regarding whether the claimant was disabled")); *see also Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (recognizing that "an evaluation [was] necessary for [her] to make an informed decision"); *Castle*, 557 F. App'x at 853–54 (holding that RFC was supported by substantial evidence, so no consultative exam needed to be ordered); *Outlaw v. Barnhart*, 197 F. App'x. 825, 828 (11th Cir. 2006) (finding ALJ did not err in refusing to order consultative exam because record contained extensive medical records about claimant's physical complaints); *Johnson v. Comm'r, Soc. Sec. Admin*, 618 F. App'x

544, 551 (11th Cir. 2015) (finding ALJ was presented with ample evidence of claimant's physical impairment to make informed decision based on record available).

Swanson has identified no inconsistencies or insufficiencies in the record that created an "evidentiary gap" resulting in "prejudice sufficient to justify a remand." *Graham*, 129 F.3d at 1423. She "has failed to point to anything in the record which suggests that additional medical evidence specific to [her mental impairments] might be gathered, nor has [she] alleged undiscovered facts or an undeveloped avenue of inquiry." *Id.; see also Schrimpsher v. Kijikazi*, No. 4:21-CV-472-CLM, 2022 WL 16924102, at *3 (N.D. Ala. Nov. 14, 2022) ("[Plaintiff] hasn't pointed to any evidentiary gaps in the record, and [s]he was represented during the administrative process, so [s]he had a duty to produce evidence related to his disability. . . . Plus, [Plaintiff] can only speculate that a consultative exam . . . would provide evidence that supported his claim of disability. Speculation isn't a basis for an ALJ to order a consultative exam.") (citing 20 C.F.R. §§ 404.1512(a), 404.1519a).

Additionally, not only is the record sufficient for the ALJ to have made an informed decision, the ALJ's RFC is supported by substantial evidence. With respect to mental impairments, the RFC limits Swanson to simple tasks, allows frequent interaction with supervisors and occasional interaction with coworkers and the public, and limits her to occasional changes in a routine work setting. Swanson takes no issue with a specific limitation and has not argued that a specific limitation is unsupported by substantial evidence.

Dr. Majure found Swanson to be unimpaired in her ability to understand, remember, and carry out instructions and in her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting. R. 1767–68. This evaluation and Swanson's mental health history, showing minimal, conservative treatment, constitute substantial evidence supporting the ALJ's RFC. Therefore, even if Swanson had urged a more restrictive limitation and could point to records supporting that limitation, her claim would still fail. She must show the absence of substantial evidence supporting the ALJ's determination. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) ("Under a substantial evidence standard of review, [claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion.") (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)). This Court cannot reweigh the evidence or substitute its judgment for the Commissioner's, even if the evidence preponderates against the Commissioner's factual findings. Because Dr. Majure's opinion and Plaintiff's medical records constitute substantial evidence supporting the RFC, this Court must affirm. *Winschel*, 631 F.3d at 1178; *Bloodworth*, 703 F.2d at 1239.

## V.    CONCLUSION

Accordingly, the Court finds the ALJ did not err in failing to order an additional consultative examination, and the Commissioner's decision is due to be affirmed.

Therefore, it is ORDERED as follows:

1.      Plaintiff's Motion for Summary Judgment (Doc. 6) is DENIED;

2.      The Commissioner's Motion for Summary Judgment (Doc. 7) is GRANTED; and

3.      The Commissioner's decision is AFFIRMED.

A final judgment will be entered separately.

DONE this 30th day of January, 2024.


/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE